Good morning, Your Honors. Steve Daynor on behalf of the Plaintiffs and Appellants, Peter Huk and Beverly Raff, who are present in the courtroom here today. I'd like to reserve about four or five minutes for rebuttal today. Watch your time. We'll try to help you. The Due Process Clause prevents the government from abusing its power and employing its power as an instrument of oppression. The touchstone of due process is fundamental fairness and the protection against arbitrary government action. Peter and Beverly were not treated fairly. They were subjected to arbitrary government action. The heart of the issue here involves the deprivation of substantive due process right to be free from deception by government officials in judicial proceedings. Counsel, do you agree that your best claim is under the substantive due process clause as a provision as opposed to the procedural due process? Say that the strongest position we have is in the deception perpetrated by government officials. You may want to focus on that. It's up to you, but I think that's your stronger case. Okay. This right was clearly established prior to 2009. Here, the defendants lied and suppressed known exculpatory evidence in judicial proceedings. Now, this deceptive conduct subverts the court's ability to decide the issue fairly. It does not afford due process. This violation of due process means that qualified immunity cannot be applied to such deceptive conduct. Now, as I mentioned, this right has been clearly established prior to 2009. One of the issues I'd like to highlight is that the district court found that Costanich stated that this right was not clearly established until 2010. However, Green, examining this exact same right, determined that in 2003 the right was clearly established. Now, the interplay between and it applied Green and said that it would apply equally to the removal of a dependent child from a caregiver's custody. Now, the nature of judicial proceedings involving a government will necessarily involve some type of interest at stake that requires adjudication by a judge. It requires a fair decision. It requires due process. It requires a fair decision that, as I mentioned, deceptive conduct subverts the juvenile courts. What's your best case on these? We're not removing a child from parents. We're not removing a child from identified as prospective adoptive parents. We're removing the child, well, we, not we, but the child here was removed from foster parents. What's your best case for the rights of foster parents in situations of this sort? Well, here, Peter and Beverly were the foster and prospective adoptive parents. Where do we see in the record that they were the prospective adoptive parents? We see a mention in your brief that they were planning to adopt, but where do we see that they had reached the status of prospective adoptive parents? Well, prospective adoptive parent status is not something that requires the finalized adoption. Usually it means they've either applied to adopt, they've taken some steps toward adoption, not that they've considered it. Isn't that right? If I'm wrong, you tell me. Yes, that's what occurred here, Your Honor. What had they done? Advise the court that they were interested in adoptions. Throughout the time, they advised the social worker. What steps had they taken on this record? They met with the adoption social worker on May 4th and discussed adoption to express to them that they would have no problem adopting RT. They were here beyond a temporary foster placement. There was no temporary custody for RT. This was beyond that. They were on the path to adoption. They had committed themselves, committed their own resources, and did all they could to try and make RT's life better. This creates an expectation of continued custody of RT that would be requiring due process. And if I'd also direct this Court's attention to Marshall, in a footnote in there, it stated that a foster parent has at least a constitutional liberty interest in maintaining a relationship with the foster child. So even if you want to look at them purely as a foster parent, it would look as still having some, at least a minimal, interest. You said Marshall is a state case, right? Yes, I did. In addition, one of the additional theories that I had uncovered in preparing for this argument, and I had provided to the Court, is OLB Byers. It's a Tenth Circuit case, and it examined a situation very similar here, where there were foster parents who were undertaking efforts and for a permanent stable home with a child, and it developed into a prospective adoptive parent relationship. There, the Court said, that the due process clause affords foster and adoptive parents a liberty interest in the relationship to the child. In addition, what we have here is, when we look at OFER, it tells us that a foster family cannot be treated as a collection of unrelated individuals. That's an indication that there is at least some type of status and some type of liberty interest that would be afforded here, to which cannot be lied about in court. Indeed, when the appellants here attempted to obtain de facto parent status, lies were false statements and suppression of social directives. What specific false statements are you relying on for a substantive due process violation? One second, Your Honor. Some of the false statements that occurred was that Beverly misdiagnosed Artie with autism for personal financial gain. That was not true. And that Beverly had diagnosed Artie with tuberous sclerosis. That was false. Indeed, the defendant in Davis here signed a change in legal guardianship status form. When it was mentioned at the de facto parent status hearing that she had signed this, she acknowledged her signature was on the form, but she's denied and refused to explain how her signature got there. And this rule of false statements included that Peter physically abused Artie. Now, that's a matter of dispute. That's not. You're going to have a hard time making a substantive due process argument out of something that depends upon how you construe evidence, aren't you? I mean, there was evidence that the child had the bruise. There was some evidence that the child said the man had pinched him. Now, how are you going to make that into a substantive due process violation? Well, you look surprised. That would seem to me that if you're going to raise that as a substantive due process issue, you wouldn't be surprised that I ask you that. I'm not surprised, Your Honor. I was actually just thinking about how best to address your question. And when we look at that, another aspect of due process relates to the suppression of known exculpatory evidence. Here, when it was discussing that bruise, when it was talking about his instances, they failed and refused and deliberately suppressed the sheriff's report, his discussions about R.T. He was on scene. He saw R.T. He observed him and determined that there was no abuse, that this was an accidental injury by falling off of a bike. There also was video evidence by R.T. explaining that this injury had occurred when he fell off his bike. So by talking about that, by when we look at the suppression of Other aspects of it were that R.T. was barred from the courtroom because they didn't want the judge to see his development and his progress and the strides he had made under Peter and Beverly's care. You see, well, the difficulty, at least a third of the court, you know, that's all I've got is a third of the court. But you're arguing conclusions, in my view, based on the facts. The facts are what? The facts here are that the defendants in this action engaged in deception in the presentation of argument. Well, the fact is that the child was excluded from the courtroom during the time of the argument. Isn't that the fact? Excuse me. What was the question, Your Honor? The fact is the child was excluded from the courtroom during the discussion of everything on the case. Yes. Isn't that the fact? From the record before us, I don't believe that that answers the question. What is your view? In your view, what is the fact? You see, I think you're saying he was excluded because they wanted this or because they wanted that. Well, a trial court would have to decide the reason. The fact is, one thing, the reason may be another. Do you understand what I'm asking you? Kind of, Your Honor. What I would say is any facts here do need to be adjudicated. Counsel, I will point out to you, and I realize it's a great sin for an appellate judge to talk about facts, but the norm when I was a state judge was children were not permitted into the courtroom during this kind of hearing. Why is it this one case is going to be a case in which we're going to assume a nefarious motive by the exclusion? Based on the record before you, I can go back and try to find the exact information but one of the problems we've had here is that the 827 records documenting the trial and all the goings-on that happened in the court have not been released yet. Some of those documents were, but the juvenile court did not release us the records until this 12b-6 was decided. Now, the inference there, and the light was favorable to the plaintiff, the fact that the allegations are stating that the defendants refused and wanted to The inference would be that prior to that he was allowed in the courtroom. Counsel, do you want to save the rest of your time? It's up to you, but you're at 3 minutes and 27 seconds. Yes, Your Honor, I would like to save the rest of my time. Okay, very well. Are you folks going to divvy up your time? Good morning, Your Honors. May it please the Court, my name is Mary Pat Berry. I'm here from the county of Santa Barbara. I represent the county and the county social workers. Present also on the appellee's side is Mr. David Owen, present on behalf of defendant appellee Francine Kelly, and I will take about 10 minutes if I need it, and he will take the remainder of that time. Very well. And I will watch my clock. Okay. Your Honors, in this case the district court correctly found that the social workers were entitled to qualified immunity because the law did not clearly establish that failure to provide notice and a hearing. You're going to have to keep your voice up or we won't hear you. The district court correctly found that the social workers were entitled to qualified immunity because the law did not clearly establish that failure to provide notice and a hearing before removal of a foster child violates federally protected due process rights. And on what do you base that? Given green, wasn't this right established by, say, 2010? Clearly established. I'm talking about the substantive due process aspect, and putting aside for a moment the questions my colleagues ask about whether there was such a violation. I'm just trying to understand whether the substantive due process right was established, clearly established at that point. And, Your Honor, when you ask about the substantive due process right, is that with regard to plaintiff's allegation of judicial deception? Well, yes, I suppose in this case that's what it would have to be, right? Yes. And first, Your Honor, I just want to point out, as set forth in the county's brief, there's no allegation in the second amended complaint that any judicial action taken as a result of any statements by any county social worker deprived Huck and Raff of a constitutionally protected liberty interest. As you know from the- Okay, I get that as a matter of pleading. I guess my point is that you based the qualified immunity, and the court did, on the fact that the right was not clearly established. So before we get back to whether it was properly pled in the first place, I'm trying to understand, does the county agree that based on Beltran and Green, that the right, per se, was established by the time that we're talking about here, whether or not it was properly pled? No, Your Honor, we believe that the district court was correct in relying on Castanets and the language in Castanets, which analyzed Green, which analyzed the difference between a criminal prosecution and obtaining a warrant through a criminal process or in a child abuse proceeding, but where probable cause is established based on what's later established to be untrue evidence or fabricated evidence, and then a warrant results. And what the Castanets court said is, you know, this is different. This is a civil proceeding. This is not something that we feel was clearly established through Green or through Devereux. What about Beltran? Beltran, Your Honor, that was a four-paragraph per curiam decision that focused on whether or not That was an en banc case, wasn't it? I don't know, Your Honor. I know that it was a brief decision deciding that social workers were not entitled to absolute immunity. Well, we can deal with that. So, Your Honor, I don't think that the right was clearly established before 2010, and as Judge Snyder stated below, other district courts have also interpreted Castanets to mean that the right was clearly established as of the time of the Castanets opinion, so that other district courts have also relied on the language in Castanets to conclude that, in fact, that interest is one that was not established at the time that the actions were taken in this case. Isn't your position also, though, that even if it was, then don't you have an argument in your view? Absolutely. Even if it was, there just was no action by any judicial officer that caused any deprivation of rights in this case. There was what the plaintiff alleged was an opportunistic opportunity to take a child from his foster parents with no judicial action. The problem, though, well, I don't know the only problem, but one of the problems, one of the arguments, I think, it was lack of notice. Isn't that so? Lack of notice, yes. And there is, on this record, a showing of lack of notice. Isn't there? There is, and that raises the issue of the procedural due process question. And there's no federally protected right under Offer and under Gibson out of the Ninth Circuit of a foster parent in a continuing relationship with the foster child. So then you turn to did state law establish a federally protected procedural due process right? And then we look to whether or not the state law that plaintiffs rely on or the state policy establish substantive predicates and, I have to be really quick, substantive predicates and a mandated outcome. And absolutely the Department of Social Services rules, the county's contract with these foster parents,  If there is a right to notice before the deprivation of contact by the custodial person here, was there a post-deprivation hearing provided in any fashion? We know there's not a pre-deprivation. Lots of times there aren't. But was there a post-deprivation? Did they have a right to a hearing after the act was done? If they request a grievance hearing, Your Honor, yes. Did they request a grievance hearing? They requested a grievance hearing. Did they get a hearing? They did not, Your Honor. Why did they not get a hearing? They did not get a hearing because no hearing is allowed or required when a child is removed due to being in immediate danger, which was the reason the county removed the child. Plaintiffs argue that that was pretextual in any event. Yes, and since they were not given an opportunity to confront it, for all we know it was pretextual. They didn't get a post-deprivation hearing, did they? They did not, Your Honor, but they had no federally protected right to that hearing because no federally protected right was established through the state procedure. It was just processed. That's under Olin v. Joaquin Acuna. And, Your Honor, I need to give Mr. Olin his time. Thank you very much. Very well. Good morning, Your Honors. May it please the Court, David Olin on behalf of Appellee Francine Kelly. Ms. Kelly is in a somewhat different position than the social worker defendants. She was the attorney appointed by the Court to represent the minor child. And as the Court is likely aware in the juvenile dependency system, the Court, the attorneys, and all of the participants are charged with looking out for the best interests of the minor child. Ms. Kelly, as the appointed attorney, has a special interest in doing so. She's in a fiduciary relationship with that child. She has the charge with exercising her discretion to look out for the best interests of the child. And as the attorney, she is also appointed as the CAPTA guardian for the child. Now, we have argued, in addition to the qualified immunity, that Ms. Kelly is entitled to absolute quasi-judicial immunity. Let me ask you this, Counsel. Where did she preserve her arguments that she was not acting under color of state law or that the conspiracy was not alleged with sufficient specificity? We did raise that in our brief, Your Honor, and we raised it in the 12b-6 motion to the first complaint. The Court, although it granted the 12b-6 motion, expressly rejected that argument. We felt it would be inappropriate to raise it in the 12b-6 motion to the first amended complaint after the Court expressly ruled on it. So we believe it was preserved, and she certainly is not a state actor. There's no dispute about that. She was appointed as a private attorney. And to adequately allege a conspiracy, they must show actual facts. Here, they don't allege any of the facts giving rise to the conspiracy other than facts showing that Ms. Kelly exercised her discretion looking out for the best interests of the minor child. So I don't believe she is a state actor, and I don't believe she can be held liable under a 1983 violation as is alleged here. She is also entitled to the absolute immunity, as I pointed out. In the appellant's brief, they don't really address that argument. They only address it in the reply wherein they state that it can't be determined from the record that Ms. Kelly was also the captive guardian, and they concede implicitly that a captive guardian is entitled to absolute immunity. Under California rule of court 562C, the attorney appointed as the attorney for the minor will be, as the words used by the statute, will be the captive guardian. The only discretion arises if no attorney is appointed for the minor child. In that case, the CASA individual will be the captive guardian. But here, since Ms. Kelly was appointed as counsel, she was necessarily the captive guardian and therefore is entitled under Babcock to absolute immunity. She's also afforded protection under the Knorr-Pennington Doctrine, which is a litigation privilege. Opposing counsel cannot be sued for advocating on behalf of the client. That is a well-established principle throughout jurisprudence. Here, all that is alleged is that she claimed that the appellants were— The district court didn't reach that Knorr-Pennington issue, did it? It did not. What are we talking about in here for? Well, to the extent that the court finds that qualified immunity doesn't apply, then either absolute immunity does apply or she is immunized under the Knorr-Pennington Doctrine. So I'm preserving it for that purpose. And was this brief by both parties adequately? It was certainly raised extensively in our opening brief. It was raised and appellants claimed that Knorr-Pennington does not apply due to the sham exception to Knorr-Pennington, citing the Cottle decision. So, yes, I think it's fully briefed. The sham exception here does not apply. Under Cottle, appellants correctly point out that there are three types of sham exceptions, and they say under the third sham exception that Ms. Kelly doesn't apply. However, for the third type of the sham exception to apply, there has to be such a high degree of misrepresentation as to rob the proceedings of their legitimacy. And Cottle specifically states that given that that exception impinges upon the First Amendment right of petition, it has to be specifically pled. There's a heightened pleading requirement. We don't have that here. Once again, all that is alleged is that Ms. Kelly is advocating on behalf of her clients. And the law is very well established that the Miners' Council, as the advocate for the miner, exercising her discretion for the best interest of the miner, cannot be fettered or compromised or threatened by the fear of potential litigation by competing parties. And that's exactly what we have here. And Ms. Kelly certainly was entitled to have the claims against her dismissed. And with that, I'd submit. Thank you, counsel. Thank you both. We'll hear rebuttal now. Just to point out at the beginning that the Beltran decision is an embanked decision. It was not per curiam. It was short, but it was embanked. Yes, that's true. It was our clear circuit law. Yes, that's correct. To address a couple of the points very quickly, Kostanich simply looked at the time of the deprivation as to the state of the law. It didn't consider the state of the law after 2001, and therefore cannot be used to hold that judicial exception. So it seems to me what you're struggling with here is even if the right was clearly established, the points made by my colleagues about the underlying substantive due process is a little questionable. What do you think is your best argument that you have, in fact, pled a substantive due process claim? The best argument would be that when we look at a 12B6, the standard it looks at under Twombly and Iqbal, is it plausible? We don't have all the details here. We don't have all the facts. We don't need all those facts right now. And which aspect of what you allege? There's been some discussion raised by my colleagues about some, you know, what was done, what was not done. It's controverted. Is that the best case you have, is the controverted facts? Or is there something that's pretty clear on the record that's controverted? Well, we have the de facto parent status that was denied here, in part was denied on lies. And that's in response to Judge Ferris' question about the prospective adoptive parents? This was separate. This was actually de facto. At that hearing, though, the judge did order social services to contact the adoptions unit to start facilitating the adoption. We also have that it was represented and repeatedly stated that Peter and Beverly were not committed to RT. This was not true. They devoted their personal resources, their personal time, and were completely devoted to him and committed to him. That's the kind of conclusion that would be unusual for a court to look at, though. That seems to be the sort of thing that the worker is supposed to be deciding or considering. You're asking us, again, to go back and second-guess them rather than presenting us with an objective fact. What we have here is we have allegations relating to judicial deception. That shows that it is plausible here that they engaged in judicial deception. As I mentioned earlier, we do not have the entire record here to isolate every single lie, every single suppression of known exculpatory evidence. What we have, we've plausibly pled that judicial deception did occur by government officials in judicial proceedings. And the whole art of government is the art of being honest. That's Thomas Jefferson. That's a remarkable statement. Lastly, I would just say that now is the time, more than ever, where the rights of foster and prospective adoptive parents needs to be considered, especially in light of the recent Supreme Court decision of Obergefell v. Hodges, where same-sex couples were entitled to the right to marry. One basis for this. Counsel, you're at your time. Just wind it up, if you will, please, quickly. One basis for this was a right to family, and it touched upon that same-sex couples to have a family would need to have it through adopted and foster children. Okay. Your Honor, that's it. Any other questions? No, and it doesn't matter because we're not going to decide the case on the basis. But this record doesn't suggest anything short of fondness of the child for the foster parents and the foster parents for the child. There's nothing in the record that suggests that those facts aren't true. That's not the pivotal question in the cases before us, but I say it because I know the foster parents in the courtroom, and I want them to know that the record doesn't suggest that they didn't love the child. Thank you, Your Honor. And we appreciate how difficult this is for them. All right. We have to deal with the law as the law is, and we will do our best. Thank you, Your Honor. Thank you. Okay. Thank you. Thank you.  Thank you.
judges: Sentelle, Farris, M. Smith